We'll proceed to the case of Teresa Noggle v. Industrial Commission 5090619. Counsel, please. Good afternoon, Justices, Counsel. May I appease the Court? My name is Ethan Wallenberg, and I represent the employee appellant in this matter. We are here today on a case involving an aggravation or an acceleration of a pre-existing condition. This is an appeal from the Circuit Court affirming the decision of the Commission in favor of the respondent. Two issues on appeal are whether the Commission's decision on causation was against the manifest weight of the evidence, and whether the Commission's decision denying 8A medical benefits is against the manifest weight of the evidence. Since this case involves the manifest weight standard, I'd like to lay out a timeline of facts. Petitioner began working for respondent in January 1996. She worked in respondent's packaging department. Prior to her work injury, she was involved in a head-on collision car accident on August 25, 2002. Among other things, she injured her left shoulder, which is the subject matter of this appeal or claim. She underwent an MRI of her left shoulder on October 25, 2002, and the interpreter noted that it revealed a small thickness tear of the distal supraspinatus tendon. She received conservative medical treatment for her left shoulder, resulting from the car accident. Counselor, the situation is you've got Drs. Clem, Brower, and Howard concluding that the ongoing shoulder problems were not work-related. The claimant obviously believes that it is, the doctors don't think it is, and the doctors' opinions are consistent with two MRI studies. So why isn't there sufficient evidence in the record to support the commission's decision? That's really the critical overarching question. Well, I think it comes down to Petitioner being asymptomatic from February of 2003. She had a full duty release, returned back to work, up until October 13, 2003. She presented to Dr. Brower, who is an on-site company physician, for pain in both of her shoulders, both of her shoulders. She stated that she had this pain from repetitive overhead work for the past couple weeks because there was an uptick in the packaging department. I just think, I feel that is an aggravation right there alone. And then she continued to treat with these on-site physicians, treated conservatively. And Dr. Brower, at first, characterized it as a probable work-related condition. But then he goes on to change his mind later on. Well, I mean, you know, admittedly, you take your claimant as you find him or her. In this case, what I'm trying to hone in on is the overwhelming weight of the medical evidence, I think you'd have to agree, is completely against the claimant. Doctors' weight of the medical opinions go against the claimant. So the question becomes, why can't the commission believe the doctors? And why is that against the manifest weight of the evidence? Well, I think the medical records are pretty clear. She didn't treat for that time between February of 2003 and October 2003. So there's no treatment going on there whatsoever. And then she was injured from repetitive overhead work. As to their opinions, I know Dr. Howard, the IME, respondent's IME, he characterized the injury as having suffered a temporary aggravation of a preexisting condition. And that is what the commission held for causation. Well, she had a serious shoulder injury at one time as a result of the accident. You've acknowledged that, correct? I acknowledge that, but she then returned back to full-duty work. And she testified that her shoulder was normal, fine, up until there was an uptick in the repetitive overhead work prior to October 13, 2003, the manifestation date. All right, let's say you don't like the testimony of anyone. You're looking at this objectively, the claimant or the doctors.  Was there anything in the MRI that supports her, or did the MRIs basically work against her and entangle them with the doctors' opinions? Well, the MRI from October 25, 2002 showed a small thickness tear of the distal supraspinatus tendon. Dr. Wadawa read that MRI on January 15, 2003, and he said it revealed heterogeneity of the supraspinatus tendon without any tearing and characterized the MRI as fairly benign. And then she had another MRI on May 23, 2006. That MRI, the interpreter noted that there was a high-grade partial tear and severe tendinopathy of the distal supraspinatus tendon. Did any doctor specifically give you an opinion as to the cause of her present condition of ill-being? We did depose Dr. Byer, but it seemed like he did not have enough information to provide an opinion on causation. He pretty much said there could have been a number of factors that caused her present condition. So, again, I would just like to stress that we feel that when looking at all of her medical records and taking into account her testimony, that she was asymptomatic for eight months prior to the manifestation date. And then after October 2003, she had continued complaints about shoulder pain and swelling. I believe that would require reversal of the manifest weight of the evidence. Any other questions? Thank you, counsel. Counsel, please. Good afternoon, Your Honors. May it please the Court, my name is Michael Carr. I represent the appellee in this case, the respondent in the workers' compensation case below. The principal issue in this case, as Your Honor pointed out, is why should three doctors, two MRI scans, and the opinion of the claimant's own treating physician, who couldn't determine what the cause of the injury was, be overruled by the claimant's feeling that her left shoulder condition was related to her work duties in October of 2003? The simple fact is we respectfully submit an opposite conclusion is not clearly apparent in this case, and the manifest weight of the evidence, of which we've heard a great deal about today, clearly supports the Commission's decision as well as the Circuit Court's confirmation of the Commission's decision. The evidence supports the Commission's finding that at most, the claimant suffered a temporary aggravation of a pre-existing condition. Her complaints both prior to the manifestation date alleged by the petitioner from the motor vehicle accident, and afterwards were practically identical, as pointed out in my brief. The MRI findings both show a tear at the distal portion of the supraspinatus tendon. Dr. Watoa's impression of it is overruled by Dr. Western, who also looked at the MRI scan and thought he saw a tear, as well as Dr. McFarlane, who clearly must have believed that there was an MRI tear, or he wouldn't have made the referral in the first place. There were no changes that occurred in her symptoms because of her work duties, as Dr. Howard pointed out. Her symptoms were practically identical following the motor vehicle accident, and again, following the alleged manifestation date in this case. In fact, the only evidence supportive of causation in this case is petitioner's own beliefs and testimony. As I said earlier, three doctors opined that petitioner had at most a temporary aggravation, and Dr. Byer said it was impossible to ascribe it to any one event. Why we should believe petitioner's opinion or Dr. Byer's opinion over Dr. Howard, who not only had the opportunity to have all the medical records, unlike Dr. Byer, and who also knew about the motor vehicle accident and the claimant's own allegations of an aggravation in 2003, is a question that we're here to answer today. It's a question for the Commission. In any event, it's up to the Commission, under well-settled principles, to weigh the credibility and believability of the witnesses and the weight to be given to their testimony. Is that a fair statement? It is a fair statement. In addition, after petitioner left the employment of respondent, we don't know what she did for 18 months that might have aggravated her condition in any way, shape, or form. Of course, you don't need to get off in the realm of speculation. No. And the Commission refused to do that, and I would encourage the Court here today to do that as well. Based on all the evidence in the record, it is respondent's respectful submission that an opposite conclusion is not clearly apparent in this case, and the manifest weight of the evidence supports the decision of the Commission. Are there any questions, Your Honors? Thank you very much for your time this afternoon. Rebuttal? Okay. The Commission held that petitioner suffered a temporary aggravation of a preexisting condition, and then they decided that there was an accident, but there was no permanency. My question then for the Commission then would be, what's the temporary aggravation? What's the time frame of this aggravation? Is it from the time petitioner went to respondent's IME, or is it when the OCMA doctor finally said that the left shoulder injury was not work-related? Was this oral argument before the Commission? I don't believe so. I notice you could not convince Molly Mason. I have nothing further to assist with. Any questions? Thank you, Counsel. Of course, we'll take the matter unadvised.